**BOWERSOX INSURANCE AGENCY COMPANY, INC., Appellant,**

v.

**Diana M. HALSTEAD, Respondent,**

and

**Division of Employment Security, Respondent.**

**No. 69244.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 28, 1996.

Polsinelli, White, Vardeman & Shalton, Eric M. Trelz, St. Louis, for Appellant.

Alan J. Downs, St. Louis, for Respondent Mo. Dept. Labor & Industrial Relations Commission.

---

KAROHL, Judge.

Bowersox Insurance Agency (Bowersox) appeals from a decision of the Labor and Industrial Relations Commission (Commission) awarding unemployment compensation to Diana Halstead. Bowersox argues the Commission erred by failing to find Halstead was terminated for misconduct related to her work. We affirm.

Halstead commenced working for Bowersox in 1987. Bowersox terminated Halstead on January 3, 1996. Richard Clift, president of Bowersox, testified Halstead was told she was being terminated for the following reasons, "insubordination and the fact that she had been on probation prior to that, the fact that she was not doing her job, meeting the procedures, keeping her work up to date ... solely upon her performance." Her response was "I was set up." Clift did not ask her for an explanation.

Daniel Friehs, Personal Lines Manager for Bowersox, testified he had placed Halstead on probation on October 29, 1993, and again on September 15, 1994. Each probation was for 30 days, after which Friehs released her from probation and retained her as an employee. Friehs testified Halstead had failed: (1) to renew the policy for Electric Incorporated: (2) to process payment and return phone calls of client, Diana Moller; and (3) to document a client's new risk.

Halstead testified: (1) she tried to renew Electric's policy on several occasions, but they failed to renew: (2) she did properly process Moller's payment and she could not return Moller's phone calls as she was on vacation. Robert Heutel, Halstead's former co-worker, testified he was handling the Moller phone calls while Halstead was on vacation, but Friehs took the file from him.

In the initial determination of Halstead's claim for benefits, a deputy for the Missouri Division of Employment Security found the following: (1) the discharge was not for misconduct connected with work; (2) "the claimant was discharged because the employer believed she did not return customer phone calls. There is not sufficient evidence to show that the calls were received prior to the claimant going on vacation."

Employer appealed to the Appeals Tribunal. It reversed and denied benefits. Claimant appealed to the Labor and Industrial Relations Commission. It reinstated benefits after finding "claimant was discharged for her incompetent handling of her employer's insurance accounts.... The record, ... is devoid of any evidence that claimant deliberately disregarded her employer's interest by working poorly. Without more, claimant's actions do not constitute misconduct."

Bowersox argues one point on appeal. It claims the Commission erred by failing to find Halstead was terminated for misconduct related to her work, because the award is not supported by sufficient and competent evidence. It argues Halstead acted adversely to Bowersox' interest and violated policies.

Section 288.050.2, which provides for denial of benefits for employee misconduct follows in pertinent part:

2. Notwithstanding the other provisions of this law, if a deputy finds that a claimant has been discharged for misconduct connected with his work, such claimant, depending upon the seriousness of the misconduct ... according to the circumstances in each case, shall be disqualified for waiting week credit or benefits for not less than four nor more than sixteen weeks for which he claims benefits and is otherwise eligible. In addition to the disqualification for benefits under this provision the division may in the more aggravated cases of misconduct cancel all or any part of the individual's wage credits, ... according to the seriousness of the misconduct.

Misconduct connected with work is not defined by the statute nor Chapter 288. *Powell v. Div. of Emp. Sec., Etc.,* 669 S.W.2d 47, 50 (Mo.App.1984). Missouri has adopted the following definition:

[M]isconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect

of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's obligations to the employer. *Id.*

"Poor workmanship, lack of judgment or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Id.* at 51.

Our standard for review of the Commission's decision was addressed in *Powell,* at 50:

> The Commission's findings of fact, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive. We confine our jurisdiction to questions of law. This court must consider the evidence in the light most favorable to the Commission's findings, together with all reasonable inferences which may be drawn therefrom, and we may not substitute our judgment for that of the Commission, or set aside the Commission's findings and order, unless they are clearly contrary to the overwhelming weight of the evidence. (Citations omitted).

 "Generally, Employee has the burden to show she is entitled to unemployment benefits, but Employer has the burden of proving Employee was discharged for misconduct connected with work by competent and substantial evidence." *Garden View Care Center, Inc. v. Labor and Indus. Rel. Com'n,* 848 S.W.2d 603, 606 (Mo.App. E.D. 1993) (*citing Business Ctrs. v. Labor & Ind. Rel. Com'n.,* 743 S.W.2d 588, 589 (Mo.App. 1988)).

Here, conflicting testimony was presented by Halstead and Bowersox. Halstead's testimony, if accepted, supports a finding she was performing her work adequately, or, at worst, was not performing acts of misconduct. The burden of misconduct was on Bowersox. It presented testimony by the company's president and Halstead's boss. They testified she was not meeting procedures nor keeping her work up to date; she did not properly renew policies; and, she failed to properly process a client's payment. In light of Halstead's explana-

tions, this testimony would support a finding of either misconduct or poor performance. The Commission found poor performance. Poor job performance alone does not make Halstead ineligible for unemployment benefits. On this record an issue of fact was for the Commission. There was competent and substantial evidence to support the Commission's findings that Halstead was not discharged due to misconduct connected with her work.

We affirm.

REINHARD, P.J., and GRIMM, J., concur.